IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00329-PAB-KLM

RONALD J. NAGIM,

    Plaintiff,

v.

JANET NAPOLITANO, in her official capacity as Secretary of the Department of Homeland Security, and
ERIC HOLDER, JR., in his official capacity as Attorney General of the United States,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [Docket No. 24; Filed August 16, 2010] (the "Motion"). Plaintiff filed an objection in Response to the Motion on August 30, 2010 [Docket Nos. 26 & 26-1] and Defendants filed a Reply on September 14, 2010 [Docket No. 30]. The Motion is fully briefed and ripe for resolution. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.L.Civ.R. 72.1C., the matter has been referred to this Court for recommendation. The Court has reviewed the Motion, Response, Reply, the entire case file, the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

### I. Summary of the Case

Plaintiff, who is a nonprisoner proceeding *pro se*, filed a federal lawsuit pursuant to

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971) on February 16, 2010. The Complaint is a rambling, frequently unintelligible rebuke of the federal government for the implementation of a so-called "Rightwing [sic] Extremism Policy." *Complaint* [#1] at 2. Although not entirely clear, Plaintiff appears to contend that he has suffered constitutional injuries due to Defendants' alleged labeling of him as a "rightwing [sic] extremist." *See id.* at 10. Specifically, he claims that the policy

> violate[s] Plaintiff['s] clearly established constitutional rights as set fourth [sic] in this complaint [and seeks]; a declaration that the "Rightwing [sic] Extremism Policy" chills the expression of controversial political speech in violation of the First Amendment; a declaration that the "Rightwing [sic] Extremism Policy" has a chilling effect on the freedom of expressive association in violation of the First Amendment; a declaration that the "Rightwing [sic] Extremism Policy" violates the equal protection guarantee of the Fifth Amendment by targeting certain individuals and groups for disfavored treatment based on the viewpoint of their speech; a permanent injunction enjoining the "Rightwing [sic] Extremism Policy" and its application to Plaintiff [sic] speech and activities; and an award of cost [sic] . . . .

*Id.* at 2-3. Construing the Complaint liberally, Plaintiff alleges that his conduct in defending a lawsuit in the State of Louisiana caught the attention of Defendants and that he has now been labeled a "terrorist" and "subject[ed] to government scrutiny, investigation, surveillance, and intimidation by the FBI, DHS, and any local authority that has acted on there [sic] frivolous claim made against Plaintiff Nagim because of a Drug Dealer, Murderer, and Rapist in which they side with."[1] *Id.* at 10-11.

---

[1] Plaintiff has filed at least three lawsuits in the State of Colorado pertaining to the Louisiana events tangentially referenced in his Complaint. The first, Case No. 08-cv-01115-ZLW, was dismissed *sua sponte* based on failure to plead with specificity pursuant to Fed. R. Civ. P. 8 and improper venue. The second, Case No. 10-cv-00328-PAB-KLM, has been recommended for dismissal based on improper venue. The third, Case No. 10-cv-01925-REB-KLM, was removed from Colorado state court by Defendants and motions to dismiss similar to those at issue in the second case are pending. Plaintiff also has at least one other case pending in this Court, Case No. 09-cv-02428-PAB-KLM, relating to alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

Plaintiff asserts three claims for relief: (1) a First Amendment freedom of speech claim; (2) a First Amendment freedom of association claim; and (3) a Fifth Amendment equal protection claim. Due to Plaintiff's *pro se* status, the Court construes the first and second claims as First Amendment retaliation claims based upon Plaintiff's alleged expression of free speech and rights of association. *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that Court's role in interpreting *pro se* party's complaint is to ignore unnecessary legal labels and attempt "to create a better correspondence between the substance of [the party's claims] and the underlying legal basis").

The only injury referenced with any specificity in Plaintiff's Complaint relates to Plaintiff's alleged inability to obtain a Transportation Workers Identification Credential ("TWIC"), which he claims to need to pursue employment in the oil and gas industry. *Complaint* [#1] at 12-13. Plaintiff also generally alleges that Defendants failed to come to his aid when they were allegedly alerted by Plaintiff that individuals in Louisiana levied untrue accusations against him, see *id.* at 12, that Defendants did not intervene on his behalf in allegedly unlawful Louisiana state court proceedings, see *id.* at 14, that Defendants' policies subjected Plaintiff to "illegal searches, detainment at airports, questioning on any and everything they can, government scrutiny, investigation, surveillance, intimidation [and] tyranny," see *id.* at 13, and that Defendants have harmed Plaintiff's reputation, see *id.* at 16.

In relation to Plaintiff's TWIC card allegation, Plaintiff does not contend that he has been denied the card, but instead that his application for the card has not been approved and that he has received no "notice on why it is taking so long to get the card." *Id.* at 12. According to the Complaint, "Plaintiff has belief [sic] that he is being denied this card and

3

they are DHS, FBI, [sic] attacking Plaintiffs [sic] livelihood by trying to disband any way possible the Plaintiffs [sic] actual employment [sic] not having his card." *Id.* Regardless of the specificity of these allegations, the Court does not have jurisdiction to consider whether Plaintiff has been illegally denied a TWIC card, which is a government-issued card permitting individuals to have non-escorted access to secure ports, vessels and related facilities. *See* 46 U.S.C. § 70105. The Court notes that the United States Court of Appeals for the D.C. Circuit or the circuit court of appeals where a plaintiff resides or works has exclusive jurisdiction over such claims. 49 U.S.C. § 46110; 49 C.F.R. § 1515.11(h). Regardless, to pursue a claim for the denial of a TWIC card, a plaintiff must allege that a final agency decision has been made and that he has exhausted his administrative remedies. *See* 49 C.F.R. §§ 1515 et seq. Plaintiff has failed to do so here and the claim alleged would be subject to denial on these pleadings in any event.[2]

Accordingly, the remaining injuries alleged in support of Plaintiff's claims relate to nonspecific conclusory allegations that Defendants somehow impacted events which occurred in Louisiana and subjected Plaintiff to unnecessary scrutiny for the unspecified exercise of his constitutional rights. To this end, Defendants seek dismissal of Plaintiff's claims primarily due to pleading failures of the Complaint. *Motion* [#24] at 3-5. In his Response to the Motion, Plaintiff attempts to explain that the exercise of his constitutional

---

[2] In addition, in their Reply, Defendants argue that any alleged injury in relation to the TWIC card is moot as Plaintiff has now been approved to receive the card. *Reply* [#30] at 4. Defendants cite a document filed by Plaintiff on September 7, 2010 [Docket No. 27 at 8] wherein he was informed that his request for the card had been approved. Although the document is not attached to Plaintiff's Complaint, the issue of mootness is jurisdictional and the Court is permitted to consider matters outside the Complaint when determining whether an injury is moot. *See generally Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). To the extent that Plaintiff's claims are based on his failure to receive a TWIC card, I agree that this claim is moot.

rights has been "criminalized" by the State of Louisiana, see *Response* [#26] at 3, and that his claims "are protected by the First Amendment for free speech, this Rightwing [sic] Extremism Policy invades, destroys, and neglects that right [and amounts to] . . . a felony crime for whom ever took such part in the disbanding of the United States Constitution[, including without limitation,] Congress." *Response* [#26-1] at 4. Plaintiff further alleges that "[t]he [unspecified] events that have taken place [constitute] . . . discrimination of the American People by Americans." *Id.* at 5.

To the extent that Defendants interpret Plaintiff's Complaint to allege that he is being unconstitutionally prosecuted and address the allegation as a secondary basis for dismissal in their Motion, see *Motion* [#24] at 5-6, Plaintiff also attempts to clarify that "[t]here are no Federal Prosecutions as this plaintiff has not, has never been, or [sic] detailed in any criminal proceeding or indictment whatsoever, this is of a false and frivolous nature to deceive this Court in believing there is such. When in fact this is illegal in the face of this Court." *Response* [#26-1] at 7. Given the arguments advanced in the Motion, and Plaintiff's clarification that he is not alleging that he is being unconstitutionally prosecuted, the Court restricts its analysis to Defendants' primary basis for dismissal of Plaintiff's Complaint, namely that it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 8 & 12(b)(6).

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 8 & 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide

5

'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'" *Ashcroft*,129 S. Ct. at 1949 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

Simply, Plaintiff's Complaint fails to plausibly state a claim under any constitutional rubric set forth therein. While it may be theoretically possible that Defendants have been targeting Plaintiff due to the exercise of his constitutional rights, Plaintiff has failed to plausibly allege facts which are legally sufficient to state a claim. *See Ashcroft*, 129 S. Ct. at 1949; *Shero*, 510 F.3d at 1200 (noting that allegations in complaint must give rise to plausibility that discovery will support the claims). There are several key shortcomings with Plaintiff's pleadings that the Court is obliged to discuss. First, to the extent that Plaintiff attempts to assert the rights of American citizens, Plaintiff likely lacks standing to assert the rights of others. *See Laird v. Tatum*, 408 U.S. 1, 13-16 (1972); 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.9.2 (3d ed. 2008 & Supp. 2010). Second, to the extent that Plaintiff alleges that Congress, the State of Louisiana, or any private citizen was involved in his alleged injuries, those entities and persons have not been sued

7

in this lawsuit and their actions are irrelevant to the discussion of whether Plaintiff has stated a claim against the Defendants named here.  Third, although Plaintiff ambiguously references the conduct of the Department of Homeland Security and the Federal Bureau of Investigation, he has failed to allege any affirmative action specifically taken by these agencies that would prompt further scrutiny.

In relation to the latter point, Plaintiff's allegations that his constitutional rights have been violated by the enactment of the "Rightwing [sic] Extremism Policy," which are based upon conclusory assertions without supporting factual detail, are insufficient to state a claim under either Fed. R. Civ. P. 8 or 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 55 U.S. at 556).  Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader in entitled to relief.'"  *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  Further, where the allegations contained in the complaint are both compatible with lawful conduct and unlawful conduct, and lawful conduct is the more likely of the two, the complaint does not plausibly plead sufficient facts to state a claim.  *Twombly*, 550 U.S. at 567, 570.

Here, as a preliminary matter, many of Plaintiff's allegations are conclusory and contain no factual basis for the conclusions being drawn.  Plaintiff's conclusory allegations that he has been subjected to unspecified surveillance and searches and that he has become a target of the federal government are not entitled to a presumption of truth.

8

*Ashcroft*, 129 S. Ct. at 1951. Indeed, the allegations are largely nonsensical. Nevertheless, "[i]t is the conclusory nature of [Plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.*

Further, to the extent that Plaintiff contends that he is being targeted by Defendants due to actions taken by Plaintiff in Louisiana, while the Complaint contains more factual detail regarding this allegation, Plaintiff nevertheless fails to sufficiently allege that Defendants have purposefully acted against him. *See id.* at 1951-52. Plaintiff "need[s] to allege more by way of factual content to 'nudg[e]' his claim[s] . . . 'across the line from conceivable to plausible." *Id.* at 1952 (quoting *Twombly*, 550 U.S. at 570). Although the Complaint contains a myriad of general allegations regarding Plaintiff's dissatisfaction with the current state of the United States, certain individuals in power, and the alleged diminishment of his First and Fifth Amendment rights, "Rule 8 does not empower [a plaintiff] to plead bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 1954.

Although the Court finds that Plaintiff's Complaint does not state any claims for relief, I briefly address Plaintiff's retaliation and equal protection claims. To establish a retaliation claim, a plaintiff must demonstrate: "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero*, 510 F.3d at 1203 (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

To prevail on the causation element of a claim for retaliation, Plaintiff "must prove

that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson v. Shanks,* 149 F.3d 1140,1144 (10th Cir.1998) (citing *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)).  In other words, a plaintiff must allege that "the actual motivating factor behind defendant's actions was retaliation." *Smith*, 899 F.2d at 949.  In attempting to provide facts which speak to the unconstitutional animus of the defendant, the presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation.  *See id.*  However, "an inference of retaliatory motive may be undermined by a long delay between the protected activity and the challenged conduct."  *Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007) (citation omitted).

Given the heightened burden of proof in relation to the third element of a retaliation claim, to survive dismissal "it is imperative that [a] plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice; plaintiffs must, rather, allege specific facts showing retaliation because of the exercise of [their] constitutional rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he [plaintiff] must allege more than his personal belief that he is the victim of retaliation.").

The Complaint does not contain specific factual detail in relation to Plaintiff's allegation that he is being retaliated against because of his speech and associations.  First, although Plaintiff generally claims that he was exercising his constitutional rights, it is not clear when or how he was exercising these rights.  On these pleadings, the Court is left to guess what Plaintiff was doing that allegedly caused him to be targeted by Defendants.

Second, other than the delay in receiving his TWIC card, Plaintiff only generally contends to have suffered adverse consequences, e.g., alleged unspecified searches or surveillance without further explanation of the individuals involved, locations, times or other relevant facts.[3] Third, Plaintiff provides no temporal information about when he suffered the alleged adverse treatment in relation to the exercise of his constitutional rights. As noted by Defendants, Plaintiff's pleadings "consist[] of rambling and incoherent political rhetoric that does nothing to [explain] how the Defendants violated his Constitutional rights." *Reply* [#30] at 1. I agree. Plaintiff's Complaint contains nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft*, 129 S. Ct. 1949. It does not contain sufficient factual detail to state a viable retaliation claim.

"In order for the [p]laintiff to succeed on [his] equal protection claim in the context of a motion to dismiss, he must allege sufficient facts to state [a] claim for relief that is plausible on its face." *Martin v. N. Metro Fire Rescue Dist.*, No. 07-cv-00977, 2007 WL 4442373, at *3 (D. Colo. Dec. 13, 2007) (unpublished opinion). To determine whether a pleading states a plausible claim in support of an equal protection violation, a plaintiff must allege (1) that he was treated differently from similarly-situated individuals; <u>and</u> either (2)(a) if the disparate treatment was based on the exercise of a fundamental right, that it was not supported by a compelling government interest; or (2)(b) if the disparate treatment was not

---

[3] Indeed, on these pleadings it is impossible to discern whether the alleged adverse actions complained of by Plaintiff are, in fact, common to everyone who travels through American airports. For example, Plaintiff contends that Defendants' alleged discriminatory policies have resulted in his detention at airports. *See Complaint* [#1] at 13. Every airline passenger is subject to search at American airports. If Plaintiff is merely complaining about heightened security in a post-September 11th world, he has not provided sufficient information that but for any protected conduct engaged in by him, he would not have been adversely treated by Defendants.

based on the exercise of a fundamental right, that it was not supported by a rational connection to a legitimate government interest. *Riddle v. Daley*, No. 09-cv-02680, 2010 WL 2593927, at *4 (D. Colo. June 23, 2010) (unpublished decision) (citing *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009)).

Plaintiff's Complaint fails the first part of the test, because he has not sufficiently alleged that he was treated differently from those who are similarly situated "in all relevant respects." *See Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008). In fact, Plaintiff does not attempt to make any clear comparison to others in the Complaint. Indeed, read liberally, Plaintiff appears to contend that Defendants' alleged policies are injurious to all Americans. Such a contention does not establish that Plaintiff has been treated differently by Defendants from others similarly situated to him in all relevant respects. Further, to the extent that Plaintiff claims that he has been subjected to disparate treatment on the basis of events that occurred in Louisiana, he fails to explain how any alleged disparate treatment he may have received was the result of Defendants' discriminatory policies, rather than the result of his own, specific conduct, or how he has been treated differently from individuals engaged in sufficiently similar conduct. For example, to the extent that Plaintiff's Complaint could be liberally interpreted to compare his treatment with that received by individuals in Louisiana who he describes as "Drug Dealer[s], Murderer[s], and Rapist[s]," Plaintiff has failed to show how these individuals are similar to him or how his treatment by Defendants has differed. *See Complaint* [#1] at 10-11.

In sum, Plaintiff's conclusory statements about his alleged injuries do not satisfy his burden here. The allegations contained in Plaintiff's Complaint do not plausibly identify

facts that speak to the necessary elements of his claims. *See Schneider*, 493 F.3d at 1177 (noting that dismissal is appropriate where court has no reason to "believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims"). Accordingly, his case should be dismissed.

### IV. Conclusion

For the reasons set forth above, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED** and that the case be **DISMISSED with prejudice**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 4, 2010

BY THE COURT:
 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix